**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL STILL,** | : | **CIVIL NO. 3:19-CV-2089** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **HYDRO EXTRUDERS, LLC and** | : | |
| **TRACEY MCMILLAN-BOOKER,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.     INTRODUCTION

Before the Court is a motion to dismiss filed by the defendants, Hydro Extruders, LLC ("Hydro") and Tracey McMillian-Booker. (Doc. 10). The plaintiff, Michael Still, brought the instant suit against the defendants claiming he was wrongfully terminated and retaliated against for taking leave under the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Still alleges that he requested to take FMLA leave to obtain treatment for substance abuse issues, and that he was terminated while he was out on FMLA leave.

The motion is fully briefed and ripe for disposition. After a review of the pleadings, we will grant in part and deny in part the defendants' motion to dismiss. We will grant the motion as to the ADA claims and as to the FMLA claim brought against McMillan-Booker, but we will deny the motion as to the FMLA claim

against Hydro, as we find that when this *pro se* complaint is liberally construed, there are enough facts pleaded in the complaint to move forward with this claim.

## II.   __BACKGROUND__

The factual background to this memorandum opinion is taken from the allegations set forth in the plaintiff's *pro se* complaint, which we are enjoined to accept as true for purposes of considering the pending motion to dismiss.

Michael Still was hired by SAPA Extruders, North America, now known as Hydro Extruders, LLC ("Hydro"), as a die-shop laborer on April 5, 2010. (Doc. 1, at 2). Still avers he was an exemplary employee during his nine-year tenure during which he received several recognition awards and no disciplinary action. (Id.) According to Still, despite his efforts as an exemplary employee, he was subjected to repeated harassment and racial epithets from his colleagues, and his numerous complaints to management went largely ignored. (Id.) Still alleges the continued harassment and lack of help from his supervisors caused him "extreme anxiety and anger," which he claims lead to his drug use as a means to cope with his negative work environment. (Id.)

On or about February 20, 2019, Still self-reported his drug use to Tracey McMillan-Booker, a human resources representative at Hydro, and at that time, she put Still in contact with the organization's insurance and short-term disability provider. (Id.) Still's short-term disability and FMLA leave were ultimately

2

approved for February 25, 2019 through April 2, 2019, and he took his allotted leave. (<u>Id.</u>, Exs. A & B).

Not long after Still's initial phone call with the insurance provider, he began experiencing withdrawal symptoms and checked himself into the detoxification program at the Wilkes-Barre Veteran's Affairs ("VA") hospital. (<u>Id.</u>) According to Still, his employment troubles began the following day, February 26, 2019, after he confided in his healthcare providers that he had a violent dream—seven years prior—about harming two of his colleagues at Hydro. (<u>Id.</u>, at 3). Still avers that after his counseling session, and upon request from a social worker, he refused to sign an authorization and disclosure form because he feared his confidential medical information would be shared with his employer. (<u>Id.</u>) Still remained in outpatient treatment until March 4, 2019. (<u>Id.</u>)

Still asserts that between March 6 and March 20, 2019, he received numerous telephone calls from McMillan-Booker inquiring into the specifics and status of his leave. (<u>Id.</u>, at 3-4). Specifically, on March 8, 2019, McMillan-Booker allegedly called Still looking for an explanation about a February 27, 2019 phone call she received from the VA about a particular conversation Still had with social workers during his in-patient treatment. (<u>Id.</u>, at 4). Still became upset with her inquiries and claims that he ultimately told McMillan-Booker he would call an attorney if she continued to contact him while he was out on his FMLA leave. (<u>Id.</u>) Finally, on

March 28, 2019, Still contacted McMillan-Booker after his final treatment and informed her that he had been released to return to work, and she informed him that he was to report to Hydro to resume his normal job duties on April 3, 2019. (Id.)

On or about April 1, 2019, two days before he was to return to work, Still was contacted via telephone conference by a human resources manager from another Hydro facility, the union steward of the International Union of Operating Engineers 542 and 835, and McMillan-Booker, and was informed that he was being suspended from his job pending an internal investigation related to "information received," which Still believes related to the February 27, 2019 call from the VA regarding Still's violent dream. (Id.) On or about April 10, 2019, Still received another call from the same parties, during which he was informed that he was being terminated due to Hydro's concerns for the safety of its employees upon learning about Still's dream in which he apparently dreamed of harming his colleagues. (Id.)

Still filed his *pro se* complaint in the district court on December 9, 2019. He alleges that he was wrongfully terminated and retaliated against under the ADA and for taking leave under the FMLA. The defendants filed their motion to dismiss on February 10, 2020 (Doc. 10), and the motion has been fully briefed. (Docs. 17, 18, 20). For the reasons set forth below, the motion will be granted in part and denied in part.

## III.    **STANDARD OF REVIEW**

The defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "failure to state a claim upon which relief can be granted." With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S. Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court

need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Two years after Fowler, the Third Circuit further observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. (1955)). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'"

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead
> to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should
> identify allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth." Id. at 1950. Finally, "where
> there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the

requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which defines

what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and
> plain statement of the grounds for the court's jurisdiction, unless the
> court already has jurisdiction and the claim needs no new jurisdictional
> support; (2) a short and plain statement of the claim showing that the
> pleader is entitled to relief; and (3) a demand for the relief sought,
> which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

Thus, a well-pleaded complaint must contain more than mere legal labels and

conclusions.  Rather, a plaintiff's complaint must recite factual allegations which are

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation, set forth in a "short and plain" statement of a cause of action.

It is against these legal benchmarks that we assess the defendants' motion to dismiss.

## IV.   **DISCUSSION**

As we have explained, the plaintiff brings claims against the defendants pursuant to the ADA and the FMLA, alleging that he was wrongfully terminated from his employment. The defendants challenge these claims, arguing that Still has failed to state a claim upon which relief can be granted. Specifically, the defendants contend that McMillan-Booker is not an "employer" under the FMLA and thus cannot be individually liable to Still on this claim. Moreover, the defendants argue that Still has failed to allege facts to support his ADA and FMLA claims against Hydro.

With respect to the plaintiff's claim under the ADA, we find that Still has not shown that this claim has been administratively exhausted, and thus we will dismiss this claim without prejudice to Still making such a showing. Moreover, we agree with the defendants that the FMLA claim against McMillan-Booker should be dismissed. However, we will deny the defendants' motion with respect to the FMLA claim against Hydro, as we find Still has pleaded enough facts, albeit hotly disputed facts, to support an inference that he was terminated for using his FMLA leave.

## A.      <u>Still Has Failed to Show that He Exhausted His ADA Claims.</u>

At the outset, we note that before an employee may proceed with an employment discrimination suit under the ADA, the employee must exhaust his administrative remedies by filing a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). <u>See</u> 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for ADA). As the Court of Appeals has stated, "[t]he purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." <u>Williams v. East Orange Community Charter School</u>, 396 F. App'x 895, 897 (3d Cir. 2010) (quoting <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996) (internal quotations omitted)).

Here, there is no indication, either from the complaint or the parties' briefs, indicating that Still ever filed a claim of discrimination with the EEOC. Accordingly, we will dismiss Still's claims brought under the ADA without prejudice to Still amending his complaint to show that his ADA claims have been administratively exhausted.[1]

---

[1] <u>See</u> <u>Fernandez v. Rose Trucking</u>, 429 F. App'x 145 (3d Cir. 2011) (affirming the district court's *sua sponte* dismissal of the plaintiff's ADA claim for failure to exhaust administrative remedies); <u>Phillips v. Sheraton Hill Society</u>, 163 F. App'x 93 (3d Cir. 2005) (noting that a district court may *sua sponte* dismiss an ADA claim for failure to exhaust so long as the claim is dismissed without prejudice).

**B.** **Still's FMLA Claim against McMillan-Booker Will Be Dismissed.**

Still brings an FMLA claim against McMillan-Booker in her individual capacity. However, an individual may be liable under the FMLA only if that individual can be considered an "employer" within the meaning of the Act. Accordingly, because we find that Still has not pleaded sufficient facts to support this claim against McMillan-Booker in her individual capacity, we will dismiss this claim without prejudice.

The FMLA defines an employer as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," including "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(i)-(ii)(I). "Section 2611(4)(A)(ii)(I)'s inclusion of 'any person who acts, directly or indirectly, in the interest of an employer' plainly contemplates that liability for FMLA violations may be imposed upon an individual person who would not otherwise be regarded as the plaintiff's 'employer.'" Haybarger v. Lawrence Cty. Adult Prob. & Parole, 667 F.3d 408, 413 (3d Cir. 2012). In determining whether an individual constitutes an employer within the meaning of the statute, the Third Circuit held that "an individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole

or part for the alleged violation' while acting in the employer's interest." Id. at 417

(quoting Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987)).

When analyzing a supervisor's control over an employee under the FMLA,

courts use an "economic reality" multifactorial, totality-of-the-circumstances test.

Id. The relevant factors of this test include whether the supervisor "(1) had the power

to hire and fire the employee[], (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records." Id. at 418. The Haybarger Court

applied these factors and concluded that the supervisor in that case, while lacking

the actual authority to fire an employee, "exercised significant control over the

conditions of Haybarger's employment prior to her termination." Id. at 419. In

making this determination, the Court relied on several factors that gave significant

weight to the supervisor's "employer" status, including his recommendation to the

district court administrator and president judge to terminate Haybarger's

employment; his termination letter to Haybarger indicating it was in the "best

interest" of the organization's operations; his involvement and preparation in

Haybarger's performance reviews; and his disciplinary action of Haybarger when he

was dissatisfied with her performance with no previous approval from his

supervisors. Id. at 418-19. The Court held that the totality of the circumstances

suggested that the supervisor qualified as Haybarger's employer. Id. at 419.

On this score, after a review of the complaint, we find that Still has not pleaded any facts that would indicate McMillan-Booker was acting as his employer as defined by the FMLA. The complaint omits any facts indicating whether McMillan-Booker had the power to hire or fire employees, controlled his work schedule, determined his rate and method of payment, or maintained employment records. Moreover, Still avers that a different human resources director from a different Hydro location participated in the calls during which the decision was made to suspend and terminate his employment. There is no indication that McMillan-Booker had the authority to terminate Still's employment, or even that she had played a significant role in the decision to terminate his employment. The complaint merely avers that McMillan-Booker was a human resources representative with whom Still worked to obtain his FMLA leave. Without more, McMillan-Booker's title as a human resources representative is simply not enough to overcome the factors set forth in <u>Haybarger</u>, and it does not show that she was acting as an employer under § 2611(4)(A)(ii)(I). Accordingly, the defendant's motion to dismiss Still's FMLA claim against McMillan-Booker in her individual capacity is granted but with leave to amend the complaint to set forth factual allegations supporting this claim.

## C.  **Still Has Stated an FMLA Retaliation Claim Against Hydro.**

Finally, while we have found that Still has failed to plead sufficient facts to state an FMLA claim against McMillan-Booker individually, we find that the complaint sufficiently states a claim against Hydro for FMLA retaliation. We reach this conclusion while noting that the facts relied upon by Still are hotly disputed by Hydro, which views the background of this dispute in starkly different terms. However, at this juncture, where our consideration is cabined by, and confined to, the well-pleaded facts in the complaint, we will deny the defendants' motion with respect to this claim.

At the outset, we are reminded that "a document filed *pro se* is to be liberally construed, ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).[2] Still brings a broad FMLA claim against the defendants without indicating whether his claims arise under a retaliation or interference provision as allowed by the FMLA. However, to the extent Still is alleging an interference claim, this claim fails as a matter of law because his requested FMLA leave was granted and he took his allotted time. See Ross v.

---

[2] The defendants' motion to dismiss the complaint pursuant to Rule 10(b) for failure to adhere to pleading format requirements is also denied. Although Still's complaint omits numbered paragraphs, it clearly discloses the nature of Still's grievances and his theory of the case, and it is clear that the defendants are on notice of the claims against them.

Gilhuly, 755 F.3d 185, 192 (3d Cir. 2014) (holding that "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld").

To state a claim for retaliation under the FMLA, an employee must allege that after taking FMLA-qualifying leave, he was subjected to an adverse employment action, including termination or other retaliatory action, because he took time away from work for FMLA-qualifying reasons. See, e.g., Freeman v. Phila. Hous. Auth., No. 12-1422, 2013 WL 3761274, at *22 (E.D. Pa. July 18, 2013) (describing retaliation claims as those "where an employee requested or took FMLA leave, remained at or returned to work, and then was subject to some type of adverse employment action such as termination or demotion.").

To prevail on his FMLA retaliation claim, it is the plaintiff's burden to establish a *prima facie* case by showing that (1) he invoked a right to FMLA-qualifying leave, (2) subsequently suffered an adverse employment decision, and (3) demonstrate that the adverse action was causally related to his invocation of his FMLA rights. Ross, 755 F.3d at 193 (citing Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to show a legitimate, non-retaliatory reason for the allegedly adverse employment decision. Lichtenstein, 691 F.3d at 302. If the employer satisfies this "minimal burden," id., the plaintiff has the burden of establishing evidence sufficient to cast doubt on the employer's legitimate, non-

retaliatory reason. Id. As we have noted, the essence of a retaliation claim is that the defendant has taken some adverse action against an employee because of her use of FMLA. Kintz v. SMNRC, L.P., No. 4:16-CV-02313, 2018 WL 5279320, at *5 (M.D. Pa. Oct. 24, 2018).

Here, it is undisputed that Still meets the first two elements of a *prima facie* case of retaliation. On this score, Still took his approved FMLA leave from February 25, 2019 through April 2, 2019, and he suffered an adverse action when was suspended while he was out on leave on April 1, and when he was subsequently terminated from his employment with Hydro on April 10. In addition, we find that Still has pleaded enough at this stage to show that his suspension and termination were causally related to his invocation of FMLA leave. In the context of a motion for summary judgment, the Third Circuit has spoken to the nature of the circumstantial evidence needed to create a genuine issue of fact regarding causation:

> To demonstrate a *prima facie* case of causation, [a plaintiff] must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279–81 (3d Cir.2000). When the "temporal proximity" between the protected activity and adverse action is "unduly suggestive," this "is sufficient standing alone to create an inference of causality and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir.2007). "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" Id. (quoting Farrell, 206 F.3d at 280).

Lichtenstein, 691 F.3d at 307.

Put another way:

> To demonstrate a causal connection, a plaintiff generally must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007). Employers "cannot use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c).

<u>Budhun,</u> 765 F.3d at 258.

Here, because the plaintiff's burden is less onerous at the motion to dismiss stage, we find that he has sufficiently pleaded facts to raise an inference that his termination was casually connected to the invocation of his FMLA rights. <u>See Spurlock v. NYNEX</u>, 949 F.Supp. 1022, 1032 (W.D.N.Y. 1996) ("plaintiff's burden to survive a summary judgment motion at the prima facie stage of a retaliation case is *de minimis*, [and] it is difficult to see how the plaintiff's burden at the motion to dismiss stage can be more onerous"). In this case, Still claims that he was suspended while he was out on FMLA leave and a mere two days before he was supposed to return to work, and that he was subsequently terminated after being told he was not permitted to return to work. Accordingly, we find the temporal proximity to be sufficiently suggestive to support an inference of causation in this case.

The burden then shifts to Hydro to proffer a legitimate, non-retaliatory reason for Still's adverse action. On this score, Hydro contends that Still was terminated based on information communicated to Hydro by Still's healthcare workers that Still

carried a risk of "commit[ting] violence against his co-workers," and that he "was a physical threat to other employees," based on Still's apparent admission to his counselor that he had a dream in which he harmed two coworkers. (Doc. 17). While this information may well fully satisfy Hydro's burden of proof and persuasion, in our view, it requires us to foray beyond the pleadings to a consideration of the undisputed facts, a task better suited for a summary judgment motion. In any event, Still also forays beyond the pleadings making a factually-based claim that Hydro's reason for terminating him was a pretext for retaliation.

On this score, Still alleges that while he was out on FMLA leave, and while he was receiving treatment, McMillan-Booker contacted him numerous times inquiring into the specifics and status of his leave. (Doc. 1, at 3-4). He avers that during his leave, McMillan-Booker asked him to "write her a letter requesting time off," and that she further inquired how much time off he was taking. (Id., at 3). Additionally, he alleges that McMillan-Booker inquired about his substance abuse and "became irate when [he] refused to answer her." (Id.) Still claims that McMillan-Booker again telephoned him questioning him about a specific conversation he had while at the VA, why he needed so much time off of work, and that he "could return to work without being fully detoxed." (Id., at 4). Hydro has not had an opportunity to address these factual matters alleged by Still to support his claim that Hydro's stated reason for his employment termination was pretextual. Therefore, resolution

of Still's FMLA retaliation claim against Hydro takes us beyond the pleadings to an assessment of the evidence, a task which must await another day, and another motion in the nature of a motion for summary judgment. Accordingly the defendants' motion to dismiss this claim on the pleadings alone will be denied without prejudice to the filing of a properly documented motion for summary judgment.

## V.   <u>CONCLUSION</u>

Accordingly, for the foregoing reasons, the defendants' motion to dismiss the plaintiffs' complaint (Doc. 10) will be GRANTED IN PART AND DENIED IN PART. The defendants' motion will be DENIED with respect to the FMLA retaliation claim against Hydro. The motion will GRANTED with respect to the plaintiff's ADA claims and the FMLA claim against McMillan-Booker, and these claims will be dismissed without prejudice to the plaintiff filing an amended complaint to address the pleading deficiencies we have identified.[3]

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Submitted this  4th day of May 2020.

---

[3] We recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).